UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


MARCEL RIDDLE,

                    Plaintiff,                              Case No. 2:10-cv-156

v.                                                         Honorable R. Allan Edgar

PATRICIA CARUSO et al.,

                    Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983.

The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation

Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any

prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a

claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such

relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro

se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's

allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504

U.S. 25, 33 (1992). Upon review, the Court will dismiss Plaintiff's complaint for failure to state a

claim against Defendants Patricia Caruso, J. Armstrong, Richard Russell, KCF Food Services

Department, T. Mackie, J. Harwood, Lou Berlinger, D. Besterman, Mary Kangas, Kim Ruby-Floyed,

Bill Hodges, unknown Mastoff, Robert Norton, D. LaLonde, Charles Cook, Michael Sibbald, S.

Fountain, and unknown Izzard. The Court will also dismiss all claims against Defendants Keith

Hutchinson, Jeffrey Woods, and Colleen Brown except Plaintiff's retaliation claim against Keith Hutchinson (Claim J), and his Eighth Amendment claims against Jeffrey Woods and Colleen Brown regarding mold and asbestos (Claim B).

## Discussion

I.    Factual allegations

Plaintiff Marcel Riddle presently is incarcerated at Ojibway Correctional Facility (OCF), but complains of events that occurred at Kinross Correctional Facility (KCF).  In his *pro se* complaint, he sues Michigan Department of Corrections (MDOC) Director Patricia Caruso, MDOC Grievance and Appeals Section Manager J. Armstrong and Acting Manager Richard Russell, KCF Food Services Department, and the following KCF employees:  Warden Jeffrey Woods, Deputy Warden T. Mackie, Assistant Deputy Warden (ADW) J. Harwood, Grievance Coordinator Lou Berlinger, Classification Director D. Besterman, Accounting Technician Mary Kangas, Food Services Director Kim Ruby-Floyed, Law Librarian Keith Hutchinson, mail room personnel Bill Hodges, Administrator Assistant Michael Sibbald, Corrections Officer (CO) unknown Mastoff, Resident Unit Managers (RUM) Robert Norton and D. LaLonde, Assistant Resident Unit Managers (ARUM) Charles Cook and Colleen Brown, Acting ARUM S. Fountain, and Sergeant unknown Izzard.

Plaintiff raises fourteen claims against the Defendants alleging violations of his constitutional rights under the First, Fifth, Eighth, Ninth and Fourteenth Amendments.  He also contends that Defendants failed to follow MDOC policies and procedure, and violated state law.

Plaintiff asserts in Claim A that his Eighth Amendment rights were violated because he was placed in a shared cell for fifteen days, which was locked for 24 hours a day.  Plaintiff claims

- 2 -

that his sleep was disrupted and he was exposed to the bodily gases of other prisoners due to lack

of ventilation. Plaintiff states that he informed Defendant Norton of these conditions. (Compl., Page

ID #5-6.) Defendant Mastoff allegedly retaliated against Plaintiff for complaining to Norton by

serving Plaintiff's meals cold and by once refusing to take Plaintiff to the bathroom, causing Plaintiff

to urinate on himself. (*Id.*, Page ID #6.)

Plaintiff raises additional allegations of Eighth Amendment violations in Claim B.

On March 20, 2009, Plaintiff was assigned to live in the "G-Unit" where he alleges the roof leaked.

Plaintiff informed Defendant Cook of the leaking roof and was told that maintenance had already

been notified of the issue. (*Id.*, Page ID #6.) Plaintiff further alleges that on April 13 and May 20,

2009 he was exposed to friable asbestos while housed in Unit-D during nearby construction and roof

repairs. Plaintiff alleges he sent a letter to Defendants Woods and Brown requesting to be moved

away from the asbestos and mold, but they failed to act. (*Id.*)

In Claim C, Plaintiff asserts that Defendants Fountain and Mackie violated the First

Amendment on July 2, 2000 when they refused to follow prison policy directives and refused to give

him indigent loans to send outgoing mail. (Compl., Page ID #7.)

In Claim D, Plaintiff alleges that Defendants Hodges, Fountain, LaLonde and Mackie

violated his First Amendment rights, due process rights, equal protection rights, and MDOC policy

directives. Plaintiff claims these violations occurred when Defendants prevented him from receiving

legal material from another prisoner, G. Barnett, in order to provide legal assistance to Barnett.

(Compl., Page ID #7.)

Plaintiff states in Claim E that Defendant Hutchinson denied his request for

photocopies and legal supplies thereby violating Plaintiff's right to access the courts. (Compl., Page

ID #7.)  He further alleges that he informed Defendants Berlinger, Harwood, and Sibbald of Defendant Hutchinson's actions but they refused to order Hutchinson to provide the requested copies.

In Claim F, Plaintiff asserts that Defendants KCF Food Services Department and KCF Food Services Director Ruby-Floyed violated his Eighth Amendment rights by adding salt to his food.  Plaintiff claims that the additional salt caused high blood pressure and, as a result, he has to take medications.  Plaintiff also alleges that he was served food tainted with bacteria, which required two weeks of medication to treat.  (Compl., Page ID #8.)

Plaintiff asserts in Claim G that Defendants Kangas, Besterman, and Sibbald improperly removed money from his prison account to pay Plaintiff's outstanding debts owed for legal fees, courts costs, MDOC Health Services and other debts owed to the MDOC including legal copying and postage.  (Compl., Page ID #8.)  Plaintiff claims he has been unable to purchase hygiene items and over-the-counter medications because Defendants have removed all of the money in his account, thereby violating his due process and equal protection rights.

In Claim H, Plaintiff asserts that Defendant Caruso allowed other Defendants to subject him to violations of his First and Eighth Amendment rights.  (Compl., Page ID ##8-9.)

In Claim I, Plaintiff alleges that on March 31, 2010 and April 5, 2010 Defendant Hutchinson violated Plaintiff's First Amendment right to access the courts by refusing to make photocopies or delaying the copying of legal documents.  (Compl., Page ID #9.)  Plaintiff states that Defendants Harwood, Izzard, and Besterman also violated his constitutional rights because he informed them of Defendant Hutchinson's conduct and they failed to take remedial action.

In Claim J, Plaintiff asserts that on April 12, 2010, Defendant Hutchinson retaliated against him by expelling him from the law library because Plaintiff had filed a grievance against Hutchinson. Plaintiff claims that he told Defendant Besterman about Hutchinson's actions. Plaintiff also sent a kite to Defendant Harwood and filed a grievance with Defendant Berlinger about Hutchinson's actions. Plaintiff is unclear, but he appears to contend that Defendants Besterman, Harwood and Berlinger violated his constitutional rights by failing to act. Plaintiff claims that Defendant Woods was the warden of KCF for all the events underlying Plaintiff's complaint and Woods is, therefore, responsible for supervising his staff and ensuring Plaintiff's constitutional rights were not violated. (Compl., Page ID ##9-10.) Plaintiff claims that Defendants Armstrong and Russell have failed to respond to the grievances Plaintiff filed. (*Id.*)

Plaintiff next raises a claim of conspiracy under 42 U.S.C. § 1985 against all Defendants. (Compl., Page ID #11.)

Last, Plaintiff raises the following three state law claims: (1) all Defendants were negligent in maintaining the prison as a governmental building; (2) all Defendants failed to prevent his alleged mistreatment even though they owed him a duty of care under their "special relationship;" and (3) all Defendants were grossly negligent, resulting in emotional and physical harm to Plaintiff. (Compl., Page ID ##11-12.)

Plaintiff requests declaratory and injunctive relief and compensatory and punitive damages.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include

more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."). The court must determine whether the complaint contains "enough

facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct.

at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it

asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct.

at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has

not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting Fed. R.

Civ. P. 8(a)(2)).

   To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right

secured by the federal Constitution or laws and must show that the deprivation was committed by

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.

Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal

rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify

the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.     Failure to Act

Plaintiff alleges that certain Defendants are responsible for the actions of their subordinates in Claims A, B, E, H, I and J.  The only allegations against Defendant Norton in Claim A are that Plaintiff told Norton his Eighth Amendment rights had been violated by his cell assignment. (Compl., Page ID ##4-5.)  In Claim B, Plaintiff fails to make specific factual allegations against Defendants Woods and Brown, other than his claim that they failed to conduct an investigation in response to his letters.  (*Id.*, Page ID ##5-6.)  In Claim E, Plaintiff fails to make specific factual allegations against Defendants Berlinger, Harwood, and Sibbald, other than his claim that they failed to conduct an investigation in response to his complaints about Defendant Hutchinson.  (*Id.*, Page ID #8.)

The only allegations against Defendant Caruso in Claim H are that she violated his First and Eighth Amendment rights by failing to supervise and control "all affairs of the department" and control the actions of her subordinates.  (*Id.*, Page ID #8-9.)  In Claim I, Plaintiff's only allegations against Defendants Harwood, Izzard, and Besterman are that he told them Defendant Hutchinson refused to make or delayed making legal copies requested by Plaintiff.  (*Id.*, Page ID #9.)  In Claim J, Plaintiff claims that he told Defendant Besterman  and sent a kite to Defendant Harwood informing them that Defendant Hutchinson retaliated against him and they failed to take remedial action.   He also that he filed a grievance with Defendants Berlinger, Armstrong and Russell regarding alleged retaliation by Defendant Hutchinson.   Defendant Berlinger allegedly denied Plaintiff's grievance and Defendants Armstrong and Russell failed respond to the grievance appeal.  (*Id*., Page ID ##9-10.)  Lastly, Plaintiff alleges that Defendant Woods was the warden of KCF for

all the events underlying Plaintiff's complaint and that Woods is, therefore, responsible to supervise his staff and ensure that Plaintiff's constitutional rights were not violated. (*Id.*)

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Ashcroft*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summer v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendants Norton, Woods, Brown, Harwood, Sibbald, Caruso, Izzard, Besterman, Berlinger, Armstrong or Russell engaged in any active unconstitutional behavior. Plaintiff, therefore, fails to state a claim against them in Claims A, B, E, H, I and J.

## B.      Legal Mail

In Claim D, Plaintiff contends that Defendants Hodges, Fountain, LaLonde and Mackie violated his constitutional rights when they prevented him from receiving legal material from another inmate, G. Barnett, in order to provide legal assistance to Barnett. (Compl., Page ID #7.) There is no First Amendment right to provide legal assistance to another inmate. *Shaw v. Murphy*,

532 U.S. 223, 228 (2001). Moreover, Plaintiff lacks standing to assert the constitutional rights of Barnett or any other prisoner. *Newsom v Norris*, 888 F.2d 371, 381 (6th Cir. 1989); *Raines v. Goedde*, No. 92-3120, 1992 WL 188120, at *2 (6th Cir. Aug. 6, 1992). As a layman, Plaintiff may only represent himself with respect to his individual claims, and may not act on behalf of other prisoners. *See O'Malley v. Brierley*, 477 F.2d 785 (3d Cir. 1973); *Lutz v. LaVelle*, 809 F.Supp. 323, 325 (M.D. Pa. 1991); *Snead v. Kirkland*, 462 F.Supp. 914, 918 (E.D. Pa. 1978). Accordingly, Plaintiff does not state a claim against Defendants Hodges, Fountain, LaLonde and Mackie in Claim D.

### C.    Access to the Courts

In Claims E and I, Plaintiff alleges that Defendant Hutchinson violated his right to access the courts by delaying or denying Plaintiff's request for photocopies of legal documents and delaying filing his request for legal supplies. (Compl., Page ID #7.)

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992); *Ryder v.*

*Ochten*, No. 96-2043, 1997 WL 720482, at *1-2 (6th Cir. Nov. 12, 1997). In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-353; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). Additionally, the Sixth Circuit repeatedly held that the constitutional right of access to the courts does not entitle prisoners to free access to photocopying machinery. *See*, *e.g.*, *Bell-Bey, v. Toombs*, No. 93-2405, 1994 WL 105900 (6th Cir. Mar. 28, 1994) ("the law is settled that an inmate does not enjoy a federal constitutional right to unlimited free photocopying services"); *Hawk v. Vidor*, No. 92-2349, 1993 WL 94007, at *1 (6th Cir. Mar. 31, 1993) ("the right to have access to the courts is not interpreted as requiring unlimited access to photocopiers").

Plaintiff fails to allege in either Claim E or I that he sustained an actual injury to any litigation resulting from Defendant Hutchinson's actions. As the Supreme Court has recognized, the underlying cause of action is an element that must be described in the complaint. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002.) In the absence of allegations of actual injury, Plaintiff fails to state a claim of constitutional significance against Defendant Hutchinson in Claims E or I.

### D.      Prison Account Funds

In Claim G, Plaintiff contends Defendants Kangas, Besterman, and Sibbald violated his due process and equal protection rights by improperly removing money from his prison account to pay for Plaintiff's outstanding debts. (Compl., Page ID #8.)

Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal

due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized negligent acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not and cannot met his burden. Plaintiff has not alleged that state post-deprivation remedies are inadequate. The Sixth Circuit has found that Michigan law provides "several adequate post-deprivation remedies" to a prisoner asserting improper removal of money from his prison account. *Copeland*, 57 F.3d at 480. In a number of cases similar to this one, the Sixth Circuit has affirmed dismissal where the inmate failed to allege and show that state law post-deprivation remedies were inadequate. *Id.* at 479-80 (money wrongly removed from prison account); *Lillie v. McGraw*, No. 97-3359, 1997 WL 778050, at *1 (6th Cir. Dec. 12, 1997) (officials allegedly broke television); *Mowatt v. Miller*, No. 92-1204, 1993 WL 27460, at *1 (6th Cir. Feb. 5, 1993) (misapplication of money to a deficit in prison account); *Shabazz v. Lecureux*, No. 85-2014, 1986 WL 16140, at *1 (6th Cir. Dec. 5, 1986) (illegal appropriation of money from prisoner account). As a result, Plaintiff fails to state a claim in Claim G against Defendants Kangas, Besterman, and Sibbald for a violation of his rights under the Due Process Clause.

Plaintiff further claims that the removal of funds from his prisoner account violated his rights under the Equal Protection Clause of the Fourteenth Amendment. (Compl., Page ID #8.) The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff suggests that because he is a "poor person," he is a member of a suspect class. (Compl., Page ID #8.)

The poor are not considered a suspect class because poverty is a mutable characteristics unlike race or national origin. *See Harris v. McRae*, 448 U.S. 297, 323 (1980) ("[T]his Court has held repeatedly that poverty, standing alone, is not a suspect classification.") (citation omitted); *see also San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 29 (1973) ("wealth discrimination alone [does not] provid[e] an adequate basis for invoking strict scrutiny"); *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 438 & 440-41 (1985) (discussing the immutable nature of personal characteristics that can trigger strict scrutiny, or at least heightened scrutiny). Furthermore, "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998). In addition, the courts have never held that prisoners have a fundamental constitutional right to possess spending money under the Constitution.

Because neither a fundamental right nor a suspect class is at issue, the rational basis review standard applies. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate

purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)).  To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff has not alleged that he has been treated different from other prisoners who have outstanding debts.  Therefore, Plaintiff fails to state a claim in Claim G against Defendants Kangas, Besterman, and Sibbald for the violation of his rights under the Equal Protection Clause because the collection of Plaintiff's debts is rationally related to a legitimate governmental purpose.

### E.    Eighth Amendment

Plaintiff alleges a variety of claims under the Eighth Amendment.  The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while

incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

An Eighth Amendment claim comprises objective and subjective components: (1) a sufficiently grave deprivation and (2) a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Woods v. LeCureux*, 110 F.3d 1215, 1222 (6th Cir. 1997). A prison official cannot be found liable unless the official has acted with deliberate indifference; that is, the official must know of and disregard an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837; *see also Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991) (deliberate indifference standard applies to all claims challenging conditions of confinement to determine whether defendants acted wantonly). The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. *Farmer*, 511 U.S. at 837. Thus, the mental state required for an Eighth Amendment claim is not actual intent, but something close to common-law recklessness. *Hubbert v. Brown*, Nos. 95-1983, 95-1988, 96-1078, 1997 WL 242084, at *5 (6th Cir. May 18, 1997) (relying on *Farmer*, 511 U.S. at 836 n.4.)

The deliberate indifference standard "describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835; *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("conduct that does not purport to be punishment at all must involve more than the ordinary lack of due care for the prisoner's interests or safety"). As the Supreme Court explained:

> The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Farmer*, 511 U.S. at 837-38 (citations omitted). Thus, accidents, mistakes, and other types of negligence are not constitutional violations merely because the victim is a prisoner. *Acord v. Brown*, No. 93-2083, 1994 WL 679365, at *2 (6th Cir. Dec. 5, 1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Rather, what is required is a conscious disregard of a substantial risk of harm. *Farmer*, 511 U.S. at 839.

*i.    Ventilation*

Plaintiff asserts in Claim A that his Eighth Amendment rights were violated because he was placed in a shared cell for fifteen days, which was locked for 24 hours a day. Plaintiff claims that his sleep was disrupted and he was exposed to the bodily gases of other prisoners due to lack of ventilation. (Compl., Page ID #5-6.) In extreme circumstances, courts have found that inadequate ventilation may result in a sufficiently serious risk to prisoner safety to violate the Eighth Amendment. *See, e.g., White v. Monohan*, 326 F. App'x 385 (7th Cir. 2009) (reversing district court dismissal of claim alleging that inadequate ventilation permitted temperatures to reach 110 degrees during the summer months); *Keenan v. Hall*, 83 F.3d 1083 (9th Cir. 1996) (allowing a prisoner's claim that his cell was "[s]aturated with the [f]umes of [f]eces (thrown by some inmates), the smell of urine and vomit as well as other stale body odors" to proceed). However, absent such extreme conditions raising serious risks to prisoner health, courts routinely have determined that claims concerning ventilation were insufficient to state an Eighth Amendment claim. *See, e.g., Vasquez v. Frank*, 290 F. App'x 927 (7th Cir. 2008) (holding that ventilation that allegedly caused dizziness, migraines, nasal congestion, nose bleeds and difficulty breathing did not rise to the level of an Eighth Amendment violation); *Chandler v. Crosby*, 379 F.3d 1278 (11th Cir. 2004) (citing cases and concluding that a ventilation system that allowed summer temperatures to average eighty-five or

eighty-six degrees during the day and eighty degrees at night was not sufficiently extreme to violate the Eighth Amendment, where such temperatures were expected and tolerated by the general public in Florida); *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (upholding the dismissal of a prisoner's claim that the confiscation of his extension cord, which was needed to operate a fan, deprived him of constitutionally adequate ventilation); *Bourrage v. McFarland*, No. 99-60923, 2001 WL 185034 (5th Cir. Feb. 6, 2001) (upholding dismissal of a prisoner's claim that inadequate ventilation caused him to need a prescription for an Albuterol Inhaler); *Jasman v. Schmidt*, 4 F. App'x 233, 235-36 (6th Cir. 2001) (affirming dismissal of a claim that the weatherstripping on the doors of the cells at a Michigan prison prevented air circulation and resulted in inadequate ventilation); *Davis v. Crowley*, No. 00-1475, 2000 WL 1871891 (6th Cir. Dec. 12, 2000) (concluding that a plaintiff's allegations that a ventilation system smelled strongly of gas did not allege a sufficiently serious harm where, despite his allegations that the fumes caused him to experience shortness of breath and watery eyes, the plaintiff failed to allege a substantial risk of serious harm).

Plaintiff has not sufficiently alleged that Defendants, by providing inadequate ventilation, have subjected him to an objectively serious deprivation. As the Supreme Court has observed, "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson*, 503 U.S. at 9. Plaintiff's allegations that he was exposed to the gases of other prisoners due to inadequate ventilation are wholly conclusory. He makes no factual allegations about the amount of ventilation in the unit, and he alleges no harm caused or aggravated by the conditions. *See Jasman v. Schmidt*, 4 F. App'x 233, 236 (6th Cir. 2001) (rejecting prisoner complaint about poor ventilation where plaintiff failed to allege harm caused by the ventilation). Because allegations create no

inference of a serious risk to his health or safety, Plaintiff fails to state a claim in Claim A for Eighth Amendment violations.

### ii.     *Temporary Inconveniences*

Plaintiff contends in Claim A that Defendant Mastoff served Plaintiff's meals cold and once refused to take Plaintiff to the bathroom, causing Plaintiff to urinate on himself. (Compl., Page ID #6.) Allegations about temporary inconveniences, e.g, being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F.Supp.2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)). The one-time denial of Plaintiff's request to leave the Day Room to use the toilet is insufficient, by itself, to state a claim under the Eighth Amendment. *See Hartsfield v. Vidor,* 199 F.3d 305, 310 (6th Cir. 1999) (stating that "deprivations of fresh water and access to the toilet for a 20-hour period, while harsh, were not cruel and unusual punishment") (citing *Stephens v. Carter County Jail*, 816 F.2d 682 (6th Cir.1987)).

Although Plaintiff alleges that he was embarrassed because he urinated on himself, he cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury resulted from the incident. *See* 42 U. S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Watson v. McClanahan*, No. 99-6124, 2000 WL 922899, at *2 (6th Cir. June 27, 2000); *Benson v. Carlton*, No. 99-6433, 2000 WL 1175609, at *1 (6th Cir. Aug. 9, 2000).

Additionally, Plaintiff alleges only that hot meals were served cold to the inmates in his cell during his fifteen-day placement. (Compl., Page ID #5-6.) Being served cold meals for a short period of time fails to allege facts showing that a prisoner was subjected to the type of extreme deprivations which are necessary for an Eighth Amendment conditions of confinement claim. *Dean v. Campbell*, No. 97-5955, 1998 WL 466137, at *2 (6th Cir. July 30, 1998) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Rhodes*, 452 U.S. at 347). Consequently, Plaintiff fails to state an Eighth Amendment claim against Defendant Mastoff in Claim A.

### iii.    Leaky Roof

Plaintiff asserts that he was exposed to a leaky roof in the bathroom and shower and that this violated his Eighth Amendment rights. Plaintiff states that he told Defendant Cook of the leaking roof and Cook informed Plaintiff that maintenance had already been notified of the issue. (Compl., Page ID #6.) Plaintiff's allegations in Claim B cannot demonstrate that Defendant Cook was deliberately indifferent to Plaintiff's health or safety. *See Farmer*, 511 U.S. at 837 (A prison official cannot be found liable unless the official has acted with deliberate indifference; that is, the official must know of and disregard an excessive risk to inmate health or safety.) Plaintiff's own allegations demonstrate that Defendant Cook was aware of the issue and that measures had been taken to fix the leaking roof. Therefore, Plaintiff fails to state a claim against Defendant Cook in Claim B for violations of the Eighth Amendment.

### iv.    Meals

In Claim F, Plaintiff asserts that Defendants KCF Food Services Department and KCF Food Services Director Ruby-Floyed violated his Eighth Amendment rights and endangered his health by denying his request for "no salt" meals. He asserts the provided meals gave him high blood

pressure. Plaintiff also contends that he was served food tainted with bacteria and, as a result, had to take medication for two weeks. (Compl., Page ID #8.) Plaintiff alleges that Defendants were deliberately indifferent to his medical needs by denying his request for a no salt diet and exposing him to bacteria in his food.

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need [] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001). The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834).

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105-06. Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichola*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

Plaintiff fails to demonstrate that Defendants were deliberately indifference to a serious medical risk. Plaintiff alleges only that the doctor prescribed medication to treat his high blood pressure and informed Plaintiff that there was no nutritionist on staff. (Compl., Page ID #8.) He does not assert that the doctor ordered Plaintiff to receive a no salt diet to treat his high blood pressure. Plaintiff also does not allege that Defendants knew any food was tainted with bacteria or that they denied him medical treatment. Additionally, he does not allege that he has any enduring medical problem resulting from the exposure to bacteria. Although Plaintiff may disagree with the medical treatment he received, the Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65

(6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). Plaintiff fails to state a claim for Eighth Amendment violations against Defendants KCF Food Service Department and Ruby-Floyed in Claim F.

*v.*      *Asbestos and Mold*

Plaintiff also alleges that he was exposed to air-borne friable asbestos and mold during roof repairs and when construction took place near his cell on March 20 and April 13, 2009. (Compl., Page ID #6-7.) Plaintiff contends that he told Defendants Woods and Brown that he was being exposed to unreasonable levels of mold and friable asbestos, that he requested to be moved, and that Defendants denied his request. (*Id.*) Plaintiff's allegations are sufficient to state a claim for Eighth Amendment violations against Defendants Woods and Brown.

**F.**      **Retaliation**

*i.*      *Defendant Mastoff*

In Claim A, Plaintiff alleges that Defendant Mastoff retaliated against him after Plaintiff complained to Defendant Norton about his conditions of confinement. (Compl., Page ID #6.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged

retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985).  "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108.  "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"  *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive); *Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994).

Plaintiff merely alleges the ultimate fact of retaliation in this action.  He provides no reason why Mastoff would retaliate for a complaint raised with another officer.  Furthermore, he has not presented any facts to support his conclusion that the serving of cold meals to all inmates placed in the same cell as Plaintiff or a one time refusal to immediately take Plaintiff to the bathroom was an act of retaliation.  Under these circumstances, Plaintiff's allegation of retaliation is merely possible, not plausible.  *Ashcroft,* 129 S. Ct. at 1949.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R.

C<small>IV</small>. P. 8(a)(2)). Accordingly, Plaintiff's allegations against Defendant Mastoff in Claim A fail to state a claim.

### ii. Defendant Hutchinson

In Claim J, Plaintiff asserts that on April 12, 2010, Defendant Hutchinson retaliated against him by expelling him from the law library because Plaintiff had filed a grievance against Defendant Hutchinson. (Compl., Page ID #9-10.) Plaintiff's allegations in Claim J against Defendant Hutchinson are sufficient to warrant service.

## G. 42 U.S.C. § 1985

Plaintiff raises a claim of conspiracy under 42 U.S.C. § 1985 against all Defendants based on the factual allegations presented in Claims A through J. (Compl., Page ID #11.) To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102,106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996). A plaintiff's allegations must show (1) the existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by the conspirators to commit an act depriving plaintiff of a federal right. *Lepley v. Dresser*, 681 F.Supp. 418, 422 (W.D. Mich. 1988). "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Hartsfield v. Mayer*, No. 95-1411, 1196 WL 43541, at *3 (6th Cir. Feb.

1, 1996). A simple allegation that defendants conspired to cover up wrongful actions is too conclusory and too speculative to state a claim of conspiracy. *Birrell v. State of Mich.,* No. 94-2456, 1995 WL 355662, at *2 (6th Cir. June 13, 1995). Plaintiff's allegations of conspiracy are vague, conclusory and speculative. Therefore, he fails to state a claim for conspiracy.

### H. Prison Policies and Procedures

In Claim C, Plaintiff claims that his First Amendment rights were violated when Defendants Fountain and Mackie refused to allow him to send outgoing mail in accordance with prison policy directives. (Compl., Page ID # 7.) In Claim D, Plaintiff alleges that Defendants Hodges, Fountain, LaLonde and Mackie violated MDOC policy directives because Plaintiff was unable to receive legal material from another prisoner, G. Barnett, in order to provide legal assistance to Barnett. (Compl., Page ID #7.)

Defendants' alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *Spruytte v. Walters*, 753 F.2d 498, 508-09 (6th Cir. 1985); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Plaintiff fails to state a claims against Defendants Fountains, Mackie, Hodges and LaLonde in Claims C and D.

# I.  Supplemental Jurisdiction

Plaintiff raises three state law claims.  He asserts that all Defendants owed him a duty under their "special relationship" to prevent the alleged mistreatment he suffered while in their care. In the other two state law claims, Plaintiff contends that all Defendants were negligent because they did not appropriately maintain the prison and were grossly negligent in Plaintiff's care resulting in emotional and physical harm.  (Compl., Page ID ##11-12.)

In order for a federal court to entertain jurisdiction over a state law claim, the action must contain both a federal claim and a state law claim arising out of the same common nucleus of operative facts. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966). The district court's discretion in determining whether to exercise supplemental jurisdiction is confined by the requirements of 28 U.S.C. § 1367, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); *see also Baskin v. Bath Twp. Bd. Of Zoning Appeals*, No. 95-3042/3881, 1996 WL 678228, at *6 (6th. Cir. Nov. 21, 1996.)  "A district court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996) (*citing Transcon. Leasing, Inc. v. Mich. Nat'l Bank*, 738 F.2d 163, 166 (6th Cir. 1984)). In making this determination a "district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp.*, 994 F.2d 1178, 1182 (6th Cir. 1993).

Plaintiff's state law claims encompass his allegations against all Defendants in ten counts. All of Plaintiff's federal claims have been dismissed except one retaliation claim against Defendant Hutchinson and two Eighth Amendment claims against Defendants Wood and Brown for alleged exposure to mold and asbestos. Only Plaintiff's remaining Eighth Amendment claims could have a common nucleus of operative facts as Plaintiff's state law claims. Accordingly, the Court finds it appropriate to exercise supplemental jurisdiction only over Plaintiff's state law claims against Defendants Wood and Brown to the extent the arise out of the same set of facts underlying Plaintiff's Eighth Amendment claims regarding exposure to asbestos and mold. Therefore, the Court will dismiss all state law claims related to the subject matter of federal claims that were dismissed. The Court will serve Plaintiff's state law claims against Defendants Wood and Brown arising out of the same facts raised in Plaintiff's Eighth Amendment claims regarding exposure to asbestos and mold.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Patricia Caruso, J. Armstrong, Richard Russell, KCF Food Services Department, T. Mackie, J. Harwood, Lou Berlinger, D. Besterman, Mary Kangas, Kim Ruby-Floyed, Bill Hodges, unknown Mastoff, Robert Norton, D. LaLonde, Charles Cook, Michael Sibbald, S. Fountain, and unknown Izzard will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss with prejudice all claims against Defendants Keith Hutchinson except Claim J and against Jeffrey Woods and Colleen Brown except Claim B. The Court will dismiss Plaintiff's state law claims without prejudice except Plaintiff's state law claims against Defendants Wood and Brown arising out of the same facts raised in Plaintiff's Eighth Amendment claims regarding exposure to asbestos and mold.

The Court will serve Plaintiff's retaliation claim against Keith Hutchinson, and his Eighth Amendment claims against Jeffrey Woods and Colleen Brown regarding mold and asbestos.

An Order consistent with this Opinion will be entered.


Dated: _____9/27/2010_____          _____/s/ R. Allan Edgar_____
                                               R. Allan Edgar
                                               United States District Judge